**Clayton HAGAN, Appellant–Defendant,**

**v.**

**STATE of Indiana, Appellee–Plaintiff.**

**No. 49A02–9503–CR–134.**

Court of Appeals of Indiana.

May 31, 1996.

---

Stephen Laudig, Laudig & George, Indianapolis, for appellant-defendant.

Pamela Carter, Attorney General, Janet L. Parsanko, Deputy Attorney General, Indianapolis, for appellee-plaintiff.

## OPINION

BAKER, Judge.

Appellant–defendant Clayton Hagan appeals his convictions for two counts of Burglary,[1] both Class B felonies, and two counts of Theft,[2] both Class D felonies. Hagan presents two issues for review, which we combine and restate as: whether the Marion County Superior Court—Juvenile Division's waiver of jurisdiction is supported by the evidence.

### FACTS

On June 26, 1993, Hagan and John Guerin decided to break into two homes. In order to gain entry into the homes, they kicked open the doors and cut the screens. Thereafter, both Hagan and Guerin removed property from the homes.

On June 28, 1993, the State questioned Hagan regarding the crimes. After consulting with his parents, Hagan signed a waiver of his rights and confessed to the crimes. Further, Hagan agreed to return the stolen property. Thereafter, the State filed a delinquency petition against Hagan alleging that he had committed acts, which, had they been committed by an adult, would have constituted two counts of burglary, both Class B felonies, and two counts of theft, both Class D felonies. Hagan was subsequently placed on home detention pending the disposition of the proceedings.

On August 12, 1993, the State filed a motion requesting the trial court to waive juve-

---

1. IND.CODE § 35–43–2–1.

2. IND.CODE § 35–43–4–2.

nile jurisdiction pursuant to IND.CODE § 31-6-2-4(e). The court conducted a hearing on the State's motion on November 17 and December 14, 1993, during which the State presented evidence that Hagan was seventeen years old at the time of the offenses, that probable cause existed that he committed the charged acts, and that the charged acts would constitute a felony if they were committed by an adult. In response, Hagan presented several witnesses, including school teachers and coaches, a psychologist, and Hagan's parents, who all testified that it was in the best interests of Hagan and the community that jurisdiction remain with the juvenile court. Several of the witnesses further testified regarding the progress Hagan had made since being placed on home detention including the increase in his grade point average from a 2.5 to a 3.6, his compliance with the requirements of home detention, and his progress in individual and family counseling. The State presented no rebuttal evidence. At the conclusion of the hearing, the court took the matter under advisement.

Thereafter, on December 20, 1993, the court granted the State's motion to waive jurisdiction, finding that the State had proved that Hagan was sixteen years of age or older, the charged crimes would be Class B felonies if committed by an adult, and there was probable cause to believe Hagan committed the charged crimes. In addition, the court stated:

> The Court heard sufficient testimony regarding Clayton's position that he should remain in the Juvenile Justice System, but there is nothing at this point that the Juvenile Justice System can do to assist this young man in his rehabilitative efforts and considering the nature of the charges that the State has pointed out in its portion of the case the Court will grant the State's Motion to Waive Juvenile Court Jurisdiction.

Record at 136. After jurisdiction was waived, Hagan was tried and convicted of two counts of burglary, as Class B felonies,

and two counts of theft, as Class D felonies. On November 18, 1994, Hagan was sentenced to six years imprisonment for each burglary conviction and one and one-half years for each theft conviction, all of which were to run concurrently and all of which were suspended.

## DISCUSSION AND DECISION [3]

 This case presents us with a question regarding the legislature's revision of the juvenile court system. Specifically, we must consider the extent of a juvenile judge's discretion to waive a juvenile into adult court and the extent to which this court may review such a waiver.

The waiver statute, I.C. § 31-6-2-4(e), provides:

> ... [T]he court shall upon motion of the prosecutor and after full investigation and hearing, waive jurisdiction if it finds that:
> (1) the child is charged with an act that, if committed by an adult, would be:
> (A) a Class A or Class B felony, ...
> (2) there is probable cause to believe that the child has committed the act; and
> (3) the child was sixteen (16) years of age or older when the act charged was allegedly committed;
> unless it would be in the best interests of the child and of the safety and welfare of the community for the child to remain within the juvenile justice system.[4]

According to the State, because I.C. § 31-6-2-4(e) provides that the court "shall" waive jurisdiction, the statute should be interpreted to require that once the first three elements of the statute are met, the juvenile court is required to waive jurisdiction, and, should the court decide not to grant waiver, it is purely a matter of grace. With this interpretation of the statute, our review would be limited to a determination of whether the first three factors were met and we would be prohibited from reviewing whether it was in the juvenile and the community's best interests to remain in the juvenile system.

---

3. Oral argument was held at Eastern High School, Greene County, Indiana, on May 1, 1996, Law Day.

4. Although the legislature amended I.C. § 31-6-2-4 in 1995, section (e), formerly I.C. § 31-6-2-4(d), has not materially changed.

On the other hand, *Soward v. State*, 606 N.E.2d 885, 886 (Ind.Ct.App.1993), provides that once the first three factors of I.C. § 31–6–2–4(e) are proven, a presumption is created in favor of waiver. It is then within the discretion of the juvenile court to retain the child in the juvenile system or to waive juvenile court jurisdiction. *Id. Soward* goes on to provide that on review, a court's exercise of discretion will be reversed if the decision is clearly against the logic and effect of the facts of the case. *Id.* According to this language, we would have the right to review the juvenile court's decision to waive jurisdiction beyond the three factors set forth in the statute.

We agree with *Soward* that a juvenile judge's decision to waive jurisdiction over a juvenile accused of committing a crime should not be beyond the review of this court. To accept the State's position, that waiver is mandatory and not subject to review once the first three factors of the waiver statute are met, would render meaningless the final portion of the statute, which provides that the juvenile shall be waived "unless it would be in the best interests of the child and of the safety and welfare of the community for the child to remain within the juvenile justice system." I.C. § 31–6–2–4(e). We believe that by retaining such language in the statute, the legislature intended the best interests of the child and the safety and welfare of the community to be a consideration, although not an element, of the juvenile court when deciding whether to waive jurisdiction. Thus, we shall review the juvenile court's decision to waive jurisdiction to determine whether the decision is clearly against the logic and effect of the facts of the case.

■ Initially, we note that we do not agree with Hagan's contention that once he presents evidence demonstrating that it would be in his best interests and the best interests of the safety and welfare of the community for him to remain in juvenile court, the burden shifts to the State to present evidence in opposition. Rather, we believe that the burden to present evidence that waiver is not in the best interests of the juvenile or of the safety and welfare of the community remains at all times on the juvenile seeking to avoid waiver. However, should the State decide not to refute the juvenile's evidence on the final portion of the statute, the State risks that the juvenile court or this court will find the juvenile's evidence persuasive and deem waiver inappropriate.

■ Nor do we believe, as Hagan suggests, that the juvenile court is required, pursuant to IND.CODE § 31–6–2–4(j), to make specific findings regarding whether it is in the juvenile's best interests and that of the safety and welfare of the community to waive jurisdiction and that the failure to do so is error. Appellant's Brief at 15–16. I.C. § 31–6–2–4(j) provides that the waiver order must include specific findings of fact to support the order. Because we have held that proof of the first three elements creates a presumption of waiver, we believe that the juvenile court is required to make findings regarding only those three elements when it determines that waiver is appropriate, and not regarding the best interests of the child and the community. To find otherwise would require the trial court to make findings in support of a negative; namely, that the juvenile has failed to prove that waiver is not in the best interests of himself or of the safety and welfare of the community.

■ Having determined that we have the authority to review a juvenile court's waiver determination, we now turn to the specific facts of this case. Here, the State presented evidence that Hagan was at least sixteen years of age, was charged with an act that would be a Class B felony if committed by an adult, and that there was probable cause to believe that Hagan committed the act. Thus, a presumption was created that Hagan should be waived to adult court. Hagan then presented evidence that it would be in his best interests and that of the safety and welfare of the community for him to remain in juvenile court. On the basis of this evidence, the juvenile court found that "there is nothing at this point that the Juvenile Justice System can do to assist this young man in his rehabilitative efforts ..." R. at 136. According to Hagan, the trial court abused its discretion in making this finding in light of his undisputed evidence that it was in his

best interests and that of the safety and welfare of the community that he stay in juvenile court. We disagree.

Hagan was over seventeen years old at the time the offenses were committed. As a result, by the time he could have been adjudicated a delinquent and the juvenile court could have taken remedial actions, Hagan would presumably have been eighteen years old.[5] Having reached that age, the juvenile court would have been foreclosed from using the sanction of the Department of Correction, as children over eighteen years old may not be sent to the Department by a juvenile court. IND.CODE § 31–6–4–15.6. Furthermore, even if Hagan were not yet eighteen at the time he was adjudicated a delinquent, the juvenile court's remedies would nonetheless have been limited because it could not incarcerate him beyond his eighteenth birthday under this statute. Thus, although the juvenile court would retain jurisdiction over Hagan until he reached the age of twenty-one years,[6] the court would be without the threat of the sanction of incarceration to further Hagan's rehabilitation. This is a "catch–22"[7] which faces all juvenile courts that adjudicate children who are approaching their eighteenth birthday when they commit crimes, and one to which this juvenile court was undoubtedly referring when it stated that there was nothing the juvenile system could do for Hagan. As a result, we cannot say that the juvenile court abused its discretion in waiving its jurisdiction over Hagan.

In sum, we find that this court has the authority to review for an abuse of discretion the decision of a juvenile court to waive its jurisdiction over a juvenile pursuant to I.C. § 31–6–2–4(e), including whether the juvenile court abused its discretion in failing to find that it is in the best interests of the child and the safety and welfare of the community for it to retain jurisdiction. However, in the instant case, considering Hagan's age at the time he committed the offenses, we cannot say that the juvenile court abused its discretion in waiving its jurisdiction.

Judgment affirmed.

NAJAM and FRIEDLANDER, JJ., concur.

---

5. In fact, Hagan turned eighteen years of age on October 17, 1993, and the waiver hearing was conducted on November 17 and December 14, 1993.

6. IND.CODE § 31–6–2–3.

7. Catch–22 is a paradoxical rule found in the novel *Catch–22* by Joseph Heller (1963), which refers to a problematic situation for which the only solution is denied by a circumstance inherent in the problem. *Websters Ninth New Collegiate Dictionary* (1991).